1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 5/14/09**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

JOHN HUA, d/b/a LINDA INTERNATIONAL,

Plaintiff,

v.

MEMC ELECTRONIC MATERIALS, INC.,

Defendant.

Case Number C 09-555 JF (RS)

**ORDER[1] DENYING MOTION TO DISMISS AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff John Hua ("Plaintiff") alleges that Defendant MEMC Electronic Materials, Inc. ("Defendant") breached a contract under which it was to sell Plaintiff twelve metric tons of polysilicon at $130 per kilogram.  Plaintiff claims that Defendant shipped approximately seven tons of the product but failed to ship the remaining five tons.  Defendant moves to dismiss on the ground that its Standard Terms and Conditions ("Terms and Conditions") were part of the contract and contain (1) a forum selection clause requiring adjudication of the instant dispute in the Eastern District of Missouri, and (2) a contractual one-year limitations period that renders the

---

[1] This disposition is not designated for publication in the official reports.

1 complaint's lone claim for breach of contract time-barred.[2]  In the alternative, Defendant moves

2 to transfer the action to Missouri pursuant to 28 U.S.C. § 1404.  Plaintiff opposes the motion on

3 the grounds that he never received the Terms and Conditions, and that irrespective of whether

4 Defendant actually sent them, the terms did not become part of the parties' agreement under

5 settled principles of contract law.  On the latter ground, Plaintiff also moves for summary

6 adjudication that his claim is timely.

7        Each of Defendant's arguments in support of its motion to dismiss turns on the question

8 of whether its Terms and Conditions were incorporated into its contract with Plaintiff.  The issue

9 of whether these terms were part of the contract in turn depends on when and under what

10 circumstances the contract was formed.  As explained below, the Court must treat Defendant's

11 motion as one for summary judgment because the Terms and Conditions are neither incorporated

12 into nor referenced in the complaint, and because their inclusion in the contract is a disputed

13 question of fact that is essential to resolution of the motion.  Finding that the record supports

14 Plaintiff's version of the formation of the contract, the Court concludes that Defendant's motion

15 for summary judgment must be denied.[3]  For the same reason, Plaintiff's motion for partial

16 

17   [2] The complaint states that the alleged breach or repudiation of the contract occurred in
18 June 2007.  Since "[a] cause of action accrues when the breach occurs, regardless of the
   aggrieved party's lack of knowledge of the breach," Plaintiff would have had until sometime in
19 June 2008 to file suit.  Plaintiff did not do so until October 1, 2008.  Thus, if the Terms and
   Conditions are part of the contract and are deemed enforceable, the action would appear to be
20 time-barred.  Plaintiff does not contest this.

21   [3] Although Plaintiff opposes the motion for summary judgment on the ground that there is
22 a genuine dispute of material fact with respect to whether he received the Terms and Conditions,
   the Court will focus instead on whether the Term and Conditions became part of the contract, as
23 that issue resolves both pending motions.  Nonetheless, the Court observes that there clearly is a
   genuine dispute of fact with respect to whether the Terms and Conditions were provided to
24 Plaintiff at any time.  Plaintiff's evidence consists of (1) his sworn statements that he never
25 received the Terms and Conditions and that the terms never were mentioned in his discussions
   with Defendant, and (2) documents reflecting the transmission of multiple invoices purportedly
26 accompanied by the terms, but which make no reference thereto.  Defendant's evidence consists
   of the declaration of an administrative employee based in Missouri–which was *not* the location of
27 the office from which Defendant appears to have faxed the relevant documents to Plaintiff–who
   states that it was the company's practice to include the terms with all of its invoices.  The parties'
28 factual dispute regarding the Terms and Conditions is both genuine and material.

2

1    summary adjudication must be granted.  With respect to the motion to transfer, Defendant has not

2    carried its burden of demonstrating that a transfer is warranted, and accordingly that motion will

3    be denied.

4                                    **I. FACTUAL BACKGROUND**

5            Plaintiff's version of the facts is as follows: Plaintiff owns a small business and operates

6    as a broker of polysilicon and other materials which he exports to China.  In 2005, Plaintiff

7    entered into a contract with Defendant for the purchase twelve metric tons of polysilicon.[4]  The

8    contract was not for "off the shelf" materials, but for materials manufactured specifically for

9    Plaintiff.  After several telephone calls with Defendant, Plaintiff sent Defendant a proposed

10   purchase order on May 16, 2005.  Defendant sent Plaintiff its own proposed purchase order on

11   letterhead that Plaintiff had provided to it.  The second purchase order contained modified terms.

12   Specifically, Plaintiff's initial purchase order requested a larger quantity of polysilicon than was

13   specified in the second proposed purchase order, and contained a forty-day delivery time-frame

14   that also was absent from the second document.  Plaintiff signed the second document–which he

15   viewed as a counteroffer–on May 5, 2005, and Defendant confirmed by telephone that a contract

16   for the polysilicon was in effect.[5]  Subsequently, Plaintiff received a letter from Defendant dated

17   June 13, 2005, stating:

18           This is to confirm that we should delivery [sic] a total of 3272.93KG of solar rod
             by June 30th.  Please arrange to have a total of $425,481.42 in your bank so that
19           you can wire transfer the funds upon my next instructions.  We do not wish to
             have the funds prior to the release but did wish to give you enough notice that you
20

21   _____

22           [4] The Court overrules Defendant's objection to paragraph 5 of the Hua Declaration, in
     which Plaintiff states that a contract had been formed by June 2005 when he entered into a re-
23   sale contract for the polysilicon.  While not dispositive of whether a legal contract actually had
     been formed, Plaintiff's opinion as to the existence of a contract is reasonable as a lay opinion in
24   light of the immediately preceding evidence of contract formation contained in his declaration.

25           [5] The Court overrules Defendant's objection to paragraph 3 of the Hua Declaration, in
     which Plaintiff states that Defendant's agents confirmed by telephone that the parties were in
26   contract.  Defendant argues that the statement is hearsay, but Fed. R. Evid. 801(d)(2) provides an
     exception to the hearsay rule for admissions by a party-opponent.  Such a statement need not
27   have been against the interest of the speaker when made.  *See, e.g.*, *United States v. Reed*, 227
     F.3d 763, 770 (7th Cir. 2000)*; United States v. Turner*, 995 F.2d 1357, 1363 (6th Cir. 1993).

28

                                                    3

could make arrangements.  The material will be made in St. Peters, Mo.  The wire transfer should be to . . . U.S. Bank, St. Louis, Missouri. . . . "

Hua Decl., Ex. 3.  For reasons that Plaintiff does not recall, the first delivery was postponed until August 2005.  On August 9, 2005, Defendant faxed Plaintiff a pro forma invoice which had no attachments.  Defendant shipped the product on August 20, 2005.  Plaintiff received the final invoice by fax on August 23, 2005 and states that it was not accompanied by Defendant's Terms and Conditions, which he claims not to have seen until after this litigation commenced.[6] Defendant ceased delivery of goods sometime around June 2007.

Defendant does not dispute Plaintiff's account with respect to the exchange of any of the foregoing documents, but it claims that its practice was to include a copy of its Terms and Conditions with both the pro forma invoice and the final invoice.  Defendant also claims that the second purchase order merely was a mechanical transcription of Plaintiff's initial purchase order, and reflected no more than an intent to engage in further negotiations with Plaintiff.  Finally, Defendant objects to Plaintiff's account of the parties' oral communications, including the representations that purportedly were made by telephone following the exchange of purchase orders.

## II. LEGAL STANDARD

### A.    Motions to dismiss pursuant to Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim upon which relief may be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  For purposes of a motion to dismiss, the plaintiff's allegations are taken as true and the court construes the complaint in the light most favorable to the plaintiff.  *SmileCare Dental*

---

[6] The Court overrules Defendant's objection to paragraph 6 of the Hua Declaration, in which Plaintiff states that he never saw or received Defendant's 2005 Terms and Conditions. Defendant argues that this statement is not within Plaintiff's personal knowledge, and that Plaintiff has not represented that it was his standard practice to receive and review invoices. However, the testimony that Plaintiff never received the Terms and Conditions clearly is within his personal knowledge, and paragraph 7 of his declaration attests to his personal receipt of the invoices.

4

1  *Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).  Leave to amend must

2  be granted unless it is absolutely clear that the complaint's deficiencies cannot be cured by

3  amendment.  *See, e.g.*, *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

4      In the context of a Rule 12(b)(6) motion, the court's review is limited to the face of the

5  complaint and matters judicially noticeable.  *See* Fed. R. Evid. 201; *Jenkins v. McKeithen*, 395

6  U.S. 411, 421 (1969); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

7  Thus, with two limited exceptions, when "matters outside the pleading are presented to and not

8  excluded by the court, the motion shall be treated as one for summary judgment and disposed of

9  as provided in Rule 56."  Fed. R. Civ. P. 12(b)(6).  Only where the outside matters (1) are

10 "matters of public record" subject to judicial notice, *see Lee v. City of Los Angeles*, 250 F.3d 668,

11 689 (9th Cir. 2001), or (2) are "properly submitted as part of the complaint," *see id.* at 688, may a

12 court consider matters outside the pleadings without converting a motion to dismiss into a

13 motion for summary judgment.

14 **B.    Summary judgment pursuant to Rule 56**

15     Summary judgment is appropriate when there are no genuine and disputed issues of

16 material fact and the moving party is entitled to prevail as a matter of law. Fed. R. Civ. P. 56;

17 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court must view the evidence in the

18 light most favorable to the non-moving party, and all reasonable inferences must be drawn in

19 favor of that party.  *Torres v. City of Los Angeles*, 540 F.3d 1031, 1039-40 (9th Cir. 2008).  The

20 moving party bears the burden of showing that there is no material factual dispute.  Therefore,

21 the court must regard as true the opposing party's evidence, if supported by affidavits or other

22 evidentiary material. *Celotex*, 477 U.S. at 324.

23 **C.    Motions to transfer pursuant to 28 U.S.C. § 1404**

24     Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, [and] in

25 the interest of justice, a district court may transfer any civil action to any other district or division

26 where it might have been brought."   The party moving for transfer of a case bears the burden of

27 demonstrating that a transfer is appropriate.  *Commodity Futures Trading Comm'n v. Savage*,

28 611 F.2d 270, 279 (9th Cir. 1979).  Transfer under § 1404(a) "should not be freely granted."  *In*

Case No. C 09-555 JF (RS)
ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT
(JFLC3)

1    *re Nine Mile, Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982).  Section 1404(a) provides for transfer to a

2    more convenient forum, "not to a forum likely to prove equally convenient or inconvenient," *Van*

3    *Dusen v. Barrack*, 376 U.S. 612, 646 (1964), and a "transfer should not be granted if the effect is

4    simply to shift the inconvenience to the party resisting the transfer."  *Id*.  Further, there is a strong

5    "presumption in favor of plaintiff's choice of forums."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,

6    508 (1947).

7        In making transfer determinations, a court must balance the deference accorded the

8    plaintiff's choice of forum with the burden of litigating in an inconvenient forum.  *Gulf Oil*, 330

9    U.S. at 508.  As part of this inquiry, the court should consider private and public interest factors

10   affecting the convenience of the forum.  Private interest factors include the relative ease of access

11   to sources of proof, the availability of compulsory process for the attendance of unwilling

12   witnesses, the cost of obtaining attendance of willing witnesses, and "all other practical problems

13   that make the trial of a case easy, expeditious and inexpensive."  *Id*.  Public interest factors

14   include "the administrative difficulties flowing from court congestion; the 'local interest in

15   having localized controversies decided at home;' the interest in having the trial of a diversity case

16   in a forum that is at home with the law that must govern the action; the avoidance of unnecessary

17   problems in conflict of laws, or in the application of foreign law[,] and the unfairness of

18   burdening citizens in an unrelated forum with jury duty."  *Piper Aircraft v. Reyno*, 454 U.S. 235,

19   241 n. 6 (1981)*;see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th

20   Cir. 1986).

21                              **III. DISCUSSION**

22   **A.    Contract formation / Terms and Conditions**

23       Because Defendants' motion requires reference to materials beyond the complaint, and

24   which are not referred to in the complaint, undisputed, or available in the public records, the

25   Court must treat the motion as one for summary judgment pursuant to Rule 56(c).  *See Lee*, 250

26   F.3d at 688-89.  The principal questions are (1) when the alleged contract was formed, and (2)

27   what terms it included.  "A contract for sale of goods may be made in any manner sufficient to

28   show agreement, including conduct by both parties which recognizes the existence of such a

6

1  contract." Cal. Com. Code § 2204(1); Mo. Rev. Stat. § 400.2-204(1).[7] "With [UCC] Article 2,

2  moreover, a 'true meeting of the minds is not required.'" *Dean Machinery Co. v. Union Bank*,

3  106 S.W.3d 510, 517 (Mo. App. 2003) (citation omitted). "Instead, the 'parties' objective intent

4  and what a reasonably prudent person would have been led to believe from the actions or words

5  of the parties' is considered." *Id.* (citation omitted). "An agreement sufficient to constitute a

6  contract for sale may be found even though the moment of its making is undetermined." UCC §

7  2-204(2); Cal. Com. Code § 2204; Mo. Rev. Stat. § 400.2-204(2).

8      Central to resolution of the instant dispute is UCC § 2-207, known commonly as the

9  "battle of forms" provision, and occasionally as "the greatest statutory mess of all time." *Oakley*

10 *Fertilizer, Inc. v. Continental Ins. Co.*, 276 S.W. 3d 342, 347 n.3 (Mo. App. 2009) (quoting Mark

11 E. Roszkowski, *Symposium on Revised Article 2 of the Uniform Commercial Code–*

12 *Section-by-Section Analysis*, 54 SMU L. Rev. 927, 932 (Spring 2001)). Section 2-207 addresses

13 two possible scenarios involving the attempted inclusion of additional terms by one party. Under

14 §§ 2-207(1) & (2), additional terms that accompany a "definite and seasonable expression of

15 acceptance or a written confirmation which is sent within a reasonable time" will become part of

16 a contract between merchants unless (a) the offer expressly limits acceptance to the terms of the

17 offer, (b) the additional terms materially alter the contract, or (c) notification of objection to the

18 terms already has been given or is given within a reasonable time after notice of the terms is

19 received. UCC §§ 2-207(1)-(2).[8] Section 2-207(3) applies where "[c]onduct by both parties . . .

20 recognizes the existence of a contract . . . [but] the writings of the parties do not otherwise

21 establish a contract. In such case the terms of the particular contract consist of those terms on

22 which the writings of the parties agree, together with any supplementary terms incorporated

23 under any other provisions of this code." Cal. Com. Code § 2207(3); Mo. Rev. Stat. § 400.2-

24 207(3).

25

26  [7] The fact that Defendant's Terms and Conditions contained a choice-of-law clause does
27 not require a decision as to what law to apply to the issue of contract formation, since the
potentially applicable bodies of law appear to be the same in all relevant respects.

28      [8] There is no dispute that the parties here are merchants.

7

1    In the instant case, the parties offer conflicting accounts of when the alleged contract was

2    formed.  Defendant argues that Plaintiff's initial proposed purchase order constituted an offer

3    which Defendant did not accept until it mailed its final invoice.  As already noted, Defendant

4    claims that the invoice "would have included" the Terms and Conditions.  Essentially, Defendant

5    characterizes the contract as one governed by § 2-207(1)-(2), in which the final invoice

6    constituted either a "definite and seasonable expression of acceptance" or a "written confirmation

7    . . . sent within a reasonable time."  Plaintiff offers two theories of formation, one under

8    subsections (1) and (2), which contrasts with Defendant's account of the parties' course of

9    dealings, and one under subsection (3), in which Plaintiff presumes that the parties' writings did

10   not fully evidence a contract, but that a contract nonetheless had been formed.  As explained

11   below, Defendant's theory is flawed because the parties clearly were in contract well before

12   Defendant sent Plaintiff either the pro forma or the final invoice.  Specifically, while Plaintiff's

13   first theory of contract formation appears to be the subject of a genuine factual dispute, Plaintiff's

14   theory under § 2-207(3) amply demonstrates the existence of a contractual relationship prior to

15   any purported inclusion of the Terms and Conditions.

16   Plaintiff's account of formation pursuant to subsections (1) and (2) is as follows:

17   Plaintiff's proposed order for the purchase of polysilicon from Defendant constituted an offer.

18   Because the purchase order "described, among other things, the goods to be shipped, the

19   quantity, [and] the price . . . , [it] was sufficient to apprise" Defendant of the offer to contract.

20   *Oakley Fertilizer*, 276 S.W. 3d at 347-48 (citation omitted).  Defendant's modified proposed

21   purchase order thus constituted a counteroffer.  While Defendant claims that it merely typed the

22   modified proposed purchase order for Plaintiff and therefore is not responsible for its contents,

23   the fact that the order contained substantially modified terms and apparently was faxed from

24   Defendant's Pasadena, Texas, sales office suggests that the document in fact was a counteroffer

25   made by Defendant.  Defendant does not contend that it sent the Terms and Conditions with this

26   document.  Finally, Plaintiff's signing of the document containing the counteroffer constituted an

27   acceptance.  While Defendant emphasizes that the supposed counteroffer still lacked the

28   signature of an agent authorized to act on its behalf, "the signature of at least one party is

8

1  evidence of contract formation." *Deluca v. Massachusetts Mut. Life Ins. Co.*, No.

2  105CV00632OWWDLB, 2005 WL 1562033, at *6 (E.D. Cal. June 28, 2005) (citing *Harm v.*

3  *Frasher*, 181 Cal. App. 2d 405, 414 (1960)); *see also Fields Engineering & Equipment, Inc. v.*

4  *Cargill, Inc.*, 651 F.2d 589, 592 (8th Cir. 1981) ("There is no question that there was a written

5  agreement between Fields and Cargill.  Further, the contract is valid and binding under Iowa law,

6  which governs here, despite the absence of the signature of one of the parties." (citing *Service*

7  *Employees International, Local No. 55 v. Cedar Rapids Community School District*, 222 N.W.2d

8  403, 407 (Iowa 1974)); *Am. Publ'g & Engraving Co. v. Walker*, 1901 WL 1407, at *2, 87 Mo.

9  App. 503 (1901) ("The circumstance that a contract lacks the signature of one of the parties to it,

10  is by no means controlling in determining whether or not it is mutual.").[9]  In Plaintiff's view, the

11  June 13, 2005 letter and subsequent invoices merely confirmed the existence of a contract.

12  Because the counteroffer was for Plaintiff to accept or reject, there was no longer a written

13  acceptance or a written confirmation of an oral acceptance for Defendant to make.  Thus, even

14  assuming that the Terms and Conditions accompanied both the pro forma and the final invoice,

15  which were sent in August 2005, the Terms and Conditions did not become part of the contract

16  under § 2-207(1)-(2).

17      While the Court agrees that the strength of Plaintiff's showing is more than sufficient to

18  defeat Defendant's motion,[10] in the context of Plaintiff's motion for summary adjudication, all

19  reasonable inferences must be drawn in favor of Defendant.  Because the characterization of the

20  second purchase order is the subject of a legitimate factual dispute, it would be inappropriate to

21  grant summary adjudication on the ground that the exchange and signing of the purchase orders

22  created a contract.  Defendant's June 13, 2005 letter does not alter this conclusion; the letter

23  cannot be characterized as a sufficiently clear acceptance of Plaintiff's offer, since the quantity

24

25

26

27      [9] This is not to say that the contract necessarily is enforceable.

28      [10] As noted above, the dispute as to whether Plaintiff ever received the Terms and
        Conditions independently requires denial of Defendant's motion.

Case No. C 09-555 JF (RS)
ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT
(JFLC3)

1   term does not reflect the scope of the parties' earlier-discussed terms.[11]  However, there remains

2   the question of whether a contract was otherwise in evidence pursuant to UCC § 2-207(3), and in

3   that respect, the record unabiguously favors Plaintiff.

4   The premise of any argument under subsection (3) is that regardless of the precise import

5   of the parties' written communications, "[c]onduct by both parties . . . recognize[d] the existence

6   of a contract."  *Id*.  In the instant case, the record does reflect that a contract had been formed.

7   The June 13, 2005 letter "confirm[ed]" delivery of a fixed quantity of goods by a date certain,

8   informed the buyer that funds should be transferred "upon [the company's] next instructions,"

9   and stated that "[t]he material *will be made* in St. Peters, Mo."  Hua Decl., Ex. 4.  It defies logic

10  to say that the June 13, 2005 letter does not constitute evidence of an existing contract.  *Cf.* UCC

11  § 2-204(2); Cal. Com. Code § 2204; Mo. Rev. Stat. § 400.2-204(2) (2000) ("An agreement

12  sufficient to constitute a contract for sale may be found even though the moment of its making is

13  undetermined.").

14  The second and sole remaining question is whether Defendant's later purported inclusion

15  of its Terms and Conditions with the final invoice had the effect of rendering those terms part of

16  the contract.  In that respect,

17       [a] comment to section 2207, subdivision (3) addresses the precise situation we
         have here:  "In many cases, as where goods are shipped, accepted and paid for
18       before any dispute arises, there is no question whether a contract has been made . .
         . .  The only question is what terms are included in the contract, and subsection (3)
19       furnishes the governing rule."  The governing rule is that one party should not be
         able to impose its terms and conditions on the other simply because it fired the
20       last shot in the battle of forms.  "Instead, all of the terms on which the parties'
         forms do not agree drop out, and the [Uniform Commercial Code] supplies the
21       missing terms."

22  *Transwestern Pipeline Co. v. Monsanto Co.*, 46 Cal. App. 4th 502, 515-16 (1996) (quoting

23  Com., 23A West's Ann. Cal. U. Com. Code, § 2207, par. 7, at 42 (1995 pocket supp.), and

24

25

26

27      [11] By contrast, the letter readily may be characterized as a confirmation of an existing

28  contract.  Because Plaintiff's order was a large one, it is not surprising that the parties required
    further communication to determine the exact size and timing of individual shipments.

Case No. C 09-555 JF (RS)
ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT
(JFLC3)

1   *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1444 (9th Cir. 1986)).[12]  Here, as

2   explained above, the written record leaves no doubt that a contract was made, and Defendant

3   cannot be allowed "to impose its terms and conditions on [Plaintiff] simply because it fired the

4   last shot in the battle of forms."  *Id.*

5          Without deciding precisely when the contract was formed or what terms it contained, the

6   Court finds that there is no genuine dispute of material fact with respect to whether the Terms

7   and Conditions became part of the contract.  Because they did not, neither the one-year

8   contractual limitations period nor the forum selection clause is operative.  Thus, the limitations

9   period applicable to Plaintiff's breach of contract claim is the four-year statutory period, UCC §

10  2-725; Cal. U.C.C. § 2725; Mo. Rev. Stat. § 400.2-725(1), and the claim is timely.

11  **B.      Transfer pursuant to § 1404**

12         Defendant asks the Court to transfer the instant action to the Eastern District of Missouri

13  for the convenience of the parties, but its showing of convenience is inadequate at best.  First,

14  there is a strong "presumption in favor of plaintiff's choice of forum[]," which should not be

15  disturbed "unless the balance is strongly in favor of the defendant." *Golf Oil*, 330 U.S. at 508.

16  This principle guides the Court's analysis here.  With respect to the private interest factors,

17  Defendant suggests that most of its witnesses are located in Missouri, but it does not explain who

18  these witnesses are or how important their testimony will be.  While Defendant has stated that it

19  has an account representative in Missouri with records concerning products that were shipped

20  and payments there were made, the invoices sent to Plaintiff reveal that the sales office for

21  Plaintiff's account was located in Pasadena, TX.  In addition, Defendant acknowledges that other

22  witnesses are located in Texas, South Carolina, and Massachusetts.  Missouri is no more

23  convenient a venue for those witnesses than is Northern California. With respect to access to

24

25         [12] Defendant attempts to distinguish *Transwestern* on the ground that it involved an offer
26  that expressly conditioned acceptance on assent to the seller's terms.  This attempt is unavailing
    for two reasons.  First, the conditioning of the offer merely led the court in *Transwestern* to
27  conclude that no contract had been formed under § 2-207(1).  That conclusion led to the court's
    free-standing discussion of § 2-207(3).  Second, regardless of what theories were presented in
28  *Transwestern*, the official comment to § 2-207(3) applies with full force in the instant case.

Case No. C 09-555 JF (RS)
ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT
(JFLC3)

documentary evidence, it appears that the amount of such evidence will be minimal.  In any event, Defendant's evidence is located in Missouri and Plaintiff's evidence is located in California, and the Court may not order a transfer "if the effect is simply to shift the inconvenience to the party resisting the transfer."  *Van Dusen*, 376 U.S. at 646.  As to the parties' contacts with the respective fora, Plaintiff's contacts with Missouri are limited to occasional, remote interactions with Defendant's employees.  By contrast, Defendant appears to have extensive contacts with California, having maintained an office until recently in Cupertino, CA, and having litigated previously in this forum.

The public interest factors either are neutral or tip slightly in Plaintiff's favor.  Neither potential forum has a particular interest in the controversy.  Such an interest ordinarily attaches where the forum's law will apply to claims brought by a resident plaintiff, and the forum has an interest in interpretation of its law by a local court.  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1336-37 (9th Cir. 1984).  Here, the relevant provisions of California and Missouri contract law are identical.  With respect to whether the controversy may be considered "local," most of the relevant conduct consisted of sending and receiving documents; Defendant did so primarily from Missouri, while Plaintiff did so from California.  This factor largely is neutral, although the fact that Plaintiff also dealt with employees of Defendant located in Massachusetts and Texas suggests that the factor marginally favors Plaintiff, who at all times did business from California.  Finally, the Missouri courts are not materially less congested than this Court, rendering the congestion factor neutral.  For all of the foregoing reasons, Defendant's motion to transfer will be denied.

## IV. CONCLUSION

Without deciding the precise sequence of contract formation in this case, the Court concludes that there is no genuine dispute as to any material fact that would permit Defendant's Terms and Conditions to be considered part of the contract.  Thus, Defendant's motion to dismiss, which properly is treated as a motion for summary judgment, will be denied, and Plaintiff's motion for summary adjudication of Defendant's contractual limitations defense will be granted.  The motion to transfer will be denied.

1
2
**IT IS SO ORDERED.**

3
DATED: 5/14/09

4
_____

5
JEREMY FOGEL
United States District Judge

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. C 09-555 JF (RS)
ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT
(JFLC3)

1

This Order has been served electronically upon the following persons:

2

3
James Goldberg , Esq james.goldberg@bryancave.com, kedra.chan@bryancave.com

4
Peter Nicholas Hadiaris , Esq peterhadiaris@att.net

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14